IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

2022 AUG -4 P 12: 36

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| JASON LEE CAMPBELL, and KYLE EVAN HORVAT,  PLAINTIFFS, v. STATE OF ALABAMA and ALABAMA DEPARTMENT OF CORRECTIONS, STATON CORRECTIONAL, WARDEN CAMILIA CARGLE, STATON CORRECTIONAL OFFICERS (Names unknown at this time but will be added as discovered) DEFENDANTS. | Civil No.: 2:22-CV-976-LSC-JHE  2:22-cv-00623-WHA-CSC  JURY DEMAND |

## JURISDICTION

This honorable court has jurisdiction of this complaint pursuant to 42 U.S.C. § 1983 based upon the continuing violations of Plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. The Plaintiffs during sustainability all of the facts herein were housed at Staton Correctional.

## COMPLAINT

Jason Lee Campbell and Kyle Evan Horvat acting as their own attorney and brings this action against the State of Alabama pursuant to the 1983 claim to enforce the Eighth and Fourteenth Amendment rights of men housed in Alabama state prisons ("Alabama prisons for men"1). The State of Alabama violates the

Eighth and Fourteenth Amendment rights of prisoners by failing to prevent prisoner-on-prisoner violence and abuse, by failing to protect prisoners from the use of excessive force by security staff,2 and by failing to provide safe conditions of Confinement in violation of the Constitution.

## RECENT VIOLATIONS OF THE 8th and 14th AMENDMENTS

On May 30, 2022, at approximately 4:30 pm, Jason Campbell, a white male and Kyle Horvat, a white male were violently attacked by three black inmates in Staton Correctional Facility.

Three inmates immediately approached the racks (the beds) and without any type of verbal confrontation and started stabbing us and attempting to grab our personal belongings in an attempt to rob us. Jason was attacked first by being stabbed in the face, under the eye and he began to defend himself but in the time of defending himself was stabbed five more times. Kyle tackled one of the attackers to another rack and was stabbed a total of four times.

There was never at any time during this attack a guard present or ever entered the dorm although guards were nearby. It was not until Kyle entered the bay covered in blood that the guard opened the door, and a code was called. These guards were within earshot of the attack, had visibility from the glass windows surrounding the dorm and there are cameras everywhere. They were always less than 50 feet away and never attempted to intervene. The bay door opened and Officer Ray, the female officer on duty attempted to put handcuffs on Kyle, who was covered in blood and still bleeding profusely. We had time to be attacked, stabbed, go back to our rack and put our shoes on and walk to the front before any kind of code was called. We were covered in blood and continued to bleed profusely and were told to stand in the common area because we were getting blood on the office floor. We had to walk ourselves down the sidewalks to healthcare, where Wexford Health never examined us but covered the stab wounds with band aids. Stab wounds that had tissue hanging out of them, they stuck a band aid over the wound.

There was no treatment of any kind at the prison. Guards thought the stab wounds were severe, so they called for an ambulance to be taken to the free world hospital. This was two hours after the attack happened.

At the hospital the wounds were cleaned, stitched, and bandaged up and the doctors said that the wounds needed to be cleaned often to avoid infection. Jason's injuries to his eye were cause for more concern so he was taken to UAB in Birmingham to see someone about his eye. He had no vision at all because he was stabbed once above the right eye and once below the left eye. At the time of this complaint filing his vision is still impaired and he is unable to fully see out of his left eye. He was told he would need to see someone again to check on his injuries but that has not happened.

Statements were also never taken by anyone at the prison and have not been taken yet as of this date. I&I was notified and were said they will take a statement. On or about July 12th an investigator from I&I came to talk to us and asked us if we wanted to press charges. We of course want to press them. We were told they were going to charge the attackers with second degree assault instead of attempted murder and attempted robbery. The investigator that came was not the one that was originally coming to talk to us. The day they were scheduled to come see us is the day we were transferred to Fountain. We were not told if the attackers were on the enemy list, put in seg, transferred or any other information regarding their whereabouts. This is also why we are refusing to go to general population, and we feel we are being punished for being the victims.

The United States Department of Justice was contacted by our families because the Warden, Camelia Cargle never reviewed the cameras to see the attackers (this was stated to us by a ranked officer that came and spoke with us in the infirmary. He stated that, "she has not had the time"), she never took statements, and we felt like they were being punished for being the victims. After the DOJ reached out to her, she made comments heard by several witnesses that, "since ya'll want to call the big dogs, I have something for yall's asses". This is when she transferred us out of Staton Correctional to Fountain Correctional.

Reports from guards that knew us and knew the details of the attack stated that the initial report stated we were attacked, and now it has a different detailed description, but they would not disclose what that was.

Before the transfer happened, Jason Campbell's ADOC profile stated he had no known marks or tattoos, which he has always had tattoos. The date of transfer someone came in and took pictures of his tattoos and then it stated on his ADOC profile that he had a confederate flag and a swastika tattoo. He does have a confederate flag tattoo that he has had since the age of 14 but does NOT have a swastika anywhere on his body. These were created to make it look racially motivated.

The attackers had previously attempted to rob someone in C dorm earlier that morning. These same inmates were allowed to go between dorms most of that day. These inmates had access to any dorm they wanted to be in and were not supposed to have this kind of access.

Similar complaints have been proven by the United States (USA). In the complaint filed by the United States of America on line 15 it states, "Defendants are responsible for the safety, care, custody and control of individuals incarcerated in Alabama's prisons for men, as well as for the actions of the ADOC staff and for the actions of any entity or individual contracting and providing services at Alabama's prisons for men." The complaint also states that, "In April 2019, the United States notified the State of Alabama and ADOC that the United States had reasonable cause to believe that the Defendants were violating the Eighth Amendment rights of prisoners housed in Alabama men's prisons by failing to protect prisoners from physical harm and abuse at the hands of other prisoners and by failing to provide safe conditions." (US v ADOC, complaint, line 34)

The USDOJ has been doing an investigation for several years with the ADOC not cooperating. The USDOJ found these claims to be accurate and notified the ADOC of their findings. Within the USDOJ report it states, "Defendants Fail to Protect Prisoners from Prisoner - on - Prisoner Violence. Defendants fail to protect prisoners in Alabama's prisons for men from serious harm and a substantial risk to

serious harm at the hands of other prisoners, including serious injury and death. Alabama's prisons for men have a high rate of prisoner – on – prisoner violence that is serious and systemic. (United States of America v State of Alabama and Alabama Department of Corrections, complaint, lines 36 A – 38) We adopt all allegations in the case of The United States vs The State of Alabama, Alabama Department of Corrections, 2:20 -CV-07971-RDP.

In 2018 in a 12-month period an estimated 250 - 300 inmates were seriously injured from assaults. Not even 2 years later that number has more than tripled. According to the ADOC public data record there has been at least 825 prisoner on prisoner attacks from September 2019 to June 2020.

These attacks have been said to be a result of deliberate indifference which made it worse by overpopulation and under staffing. The ADOC is more than at triple capacity of what the facilities were intended to hold. Staton Correctional capacity is 508 men. The actual count at the time of this complaint is 1,376 men.

There are several witnesses to attest to this case and incident, but more would like to remain anonymous. The fear of a system that is supposed to protect you is a real thing.

We hear of deaths daily across the state in men's prisons. We hear of suicides because there is no hope of being able to sleep at night without worry if you will be stabbed because the guards were too lazy to close the doors. Staton Correctional is not a safe place even for the non-violent offenders. Inmates are left to protect themselves

Inmates have been cited and written up because they reported an officer or individual that is harassing or attacking them. If attacked inmates make an incident report, Warden, Camelia Cargle, makes false charges against them. Guards are bringing in contraband. These inmates are dying in astronomical numbers, and nothing is being done to prevent it and nothing is being done to protect them.

On July 25, 2022, Kyle Horvat was transferred to Elmore Correctional where there is no lock up or infirmary for his safety. The time he was at Fountain he

refused to go to general population because he feared for his safety. Jason and Kyle both refused general population because they both feared for their safety due to the fact that the prison could not and would not keep them safe.

Kyle's wife within the week prior to him being transferred had emailed Governor Kay Ivey's office regarding the unsafe and retaliation treatment to Kyle. The Governor mailed a letter to her stating that she has forwarded her concerns to the ADOC and they will look into it. One week later he is transferred to another facility where there is no way to maintain his safety.

July 26, 2022 Kyle's wife spoke with Governor Kay Ivey's office and she was informed that she had to speak with the head of the department which was the commissioners office at ADOC. She told them the ADOC was the problem and that is why she went to the Governor. She was told the ADOC was NOT the problem, but the individual facilities were, and she was transferred to the commissioner's office. Kyle's wife spoke with the ADOC commissioner's office and was told that there was no reason he could not be at Elmore in general population because his known enemy was at another facility. The problem with that statement is that Kyle was stabbed by two – three different inmates. There were three that attacked Jason and Kyle, and this is caught on the cameras, yet the incident report says only one attacked Kyle. This is an untrue statement and makes the fear worse because now there are two attackers' whereabouts that are unknown. The witnesses all around have told the stories and they also said there was more than one attacker. This is a huge safety issue and one that needs to be addressed.

## **DELIBERATE INDIFFERENCE**

In the main cases involving 1983 claims it references Farmer v. Brennan, 511 U.S. 114 S. Ct at 1979 and states, "that jail officials knew of a substantial risk or

serious harm. Deliberate indifference requires that a deliberate choice be made to do or not to do something."

Deliberate indifference is alleged in the case of the United States v ADOC and the State of Alabama, and our statements and witness statements. The U.S. Department of Justice states in the complaint that they have "engaged in multiple rounds of negotiations with the State beginning in the spring of 2019. Since the spring of 2019 the State of Alabama has failed or refused to correct the unconstitutional conditions in Alabama's prisons for men". (US vs ADOC complaint, Dec 2020).

The State has been aware of the issues regarding safety to the inmates and has failed to do anything to prevent or try to protect prisoners from prisoner-on-prisoner violence for 22 years.

"The Defendants through their acts and omissions, utterly fail to protect prisoners from death even when ADOC officials have advance warning that certain prisoners are in danger from violence at the hands of other prisoners." (US v ADOC and the State of AL).

Deliberate indifference is proven when the guards failed to keep the doors closed and locked allowing inmates from other dorms to enter other dorms after a stabbing and robbery on May 30, 2022, by the same people who attacked us. This is a security breach, and one that could have been prevented. Allowing inmates to come from E dorm to C dorm all throughout the day committing crimes and eventually attempting murder on us and was a violation of our Constitutional Rights. The guards are held responsible for inmates' access to anywhere in the prison and this was deliberately ignored. The US v ADOC complaint addresses this issue as well when it states, "Defendants, through their acts and omissions, fail to prevent uncontrolled movement of prisoners, leading to prisoners roaming in unauthorized or unsupervised areas and leading to violence."

The shortage of guards should be no reason for the ones currently working to not do their jobs, such as closing and securing doors. The Correctional Officers are required to pass physical training as well as an academic training to make sure

they can do the job. In the job description of a Correctional Officer Trainee or a Basic Correctional Officer on the ADOC website it states, "

**ADOC Academy**

> ADOC Academy is a training course that requires participants to pass academic and physical training requirements. Both BCOs and COTs will attend ADOC Academy after passing their on-site evaluations. BCOs will attend for 6 weeks, while COTs will attend for 12 weeks.

**BCO (Basic Correctional Officer)**

> A Basic Correctional Officer (BCO) is responsible for ensuring correctional facility safety and providing rehabilitative services to inmates in a secure environment. A BCO is required to attend ADOC Academy for six weeks and receive ADOC certification. The BCO position will be organized under the State Personnel Department's Correctional Security Guard classification.

**COT (Correctional Officer Trainee)**

> A Correctional Officer Trainee (COT) is responsible for ensuring correctional facility safety and providing rehabilitative services to inmates in a secure environment. A COT will also be responsible for transferring inmates and manning the patrol tower and perimeter truck. A COT is required to attend ADOC Academy for 10 weeks and to receive APOSTC certification."

The job description according to the Alabama Department of Corrections for BOTH types of correctional officers are, "responsible for ensuring correctional facility safety and providing rehabilitative services to inmates in a SECURE ENVIRONMENT." This was deliberately not done. This is what they are trained to do. So, they made a conscious decision to NOT do something. "In Farmer, 511 U.S at 835-38, as long as those cases provide, supervisory liability ensues, so long as Plaintiffs satisfy the Farmer standard."

8

In the complaint of the US v ADOC lines 54-57 it states, "Defendants, through their acts and omissions, fail adequately to protect prisoners from death even when ADOC officials have advance warning that certain prisoners are in danger from violence at the hands of other prisoners. Due to lax supervision, turning a blind eye security staff often fail to observe the violent incidents and only discover the victim after the violence and/or injuries occur. Security staff sometimes watch a violent or troubling incident unfold and do not intervene. Defendants, through their acts and omissions, fail adequately to prevent the introduction of illegal contraband into Alabama's prisons for men and to screen entrants to Alabama's prisons for men. The failure to prevent the introduction of illegal contraband leads to prisoner-on-prisoner violence".

The inmates do not feel they are safe from inmates or ADOC employees of any ranking. There is a fear of retaliation or being labeled a snitch if the inmates report anything. This has become a huge problem in the prison system today. There are no true rehabilitation programs in the prison system in Alabama. Inmates are thrown in a huge dorm or cell and safety is thrown away along with their constitutional rights.

The lawsuit and complaint filed by the United States of America vs Alabama Department of Corrections and the State of Alabama makes it clear that these issues exist and if nothing is done then inmates will continue to die daily from attacks from other inmates, guards, drug overdoses and suicide.

We beg and plead for the right thing to be done and prove to us that our lives are worth more than a paycheck to the State by taxpayers. There are thousands of inmates going through what we have been through, and some were not as lucky as us. Even though we have permanent damages from our attacks, there are so many that lost their lives. The next time that could be us.

Kyle Horvat states, "We were transferred to another facility without knowing where our attackers are or who they know and how far their reach goes. We are in fear of our lives, and we are being forced into general population. The captain (McNeil) here at Fountain has told us they were freezing our accounts as in

commissary and snack line because we refuse to leave the safety of lock-up or seg. We are being punished for being attacked for no reason other than being white and appeared to be an easy target. We defended ourselves and we could have been killed. Captain McNeil is holding our quarterly packages personally in his office and will not allow us to have the things we have rights to because we are not going to Gen Pop."

There are numerous complaints about these types of things but when you fight them, a harsher punishment comes from within. This is in complete violation of the 8th amendment.

### COUNT I

Through the acts and omissions alleged, Defendants have subjected us to a pattern or practice of conditions of confinement that deprives them of rights, privileges, and immunities secured and protected by the Eighth Amendment to the Constitution of the United States, causing such prisoners to suffer grievous harm.

Through acts and omissions alleged, Defendants have exhibited deliberate indifference to the health and safety of prisoners in Alabama's Prisons for men, in violation of the rights, privileges, or immunities of those prisoners as secured or protected by the Eighth Amendment to the Constitution of the United States.

Unless this Court orders Defendants to comply with the Eight and Fourteenth Amendments of the Constitution of the United Sates, Defendants will continue to engage in the acts and omissions, set for in this complaint, that deprive persons confined in Alabama's prisons for men of privileges or immunities secured or protected by the Eighth and Fourteenth Amendments.

Since being transferred to Fountain, we have had our commissary accounts frozen so that we cannot order store or snack line. Captain Johnny McNeil was holding our quarterly packages that our families ordered for us (which he later gave to us), and now he has denied our visitations with our families. Captain McNeil spoke with our families and told them the visit was allowed, and he is the one that brought us the visitation form to fill out and he turned it back in. He is also the one

that told us the form was approved. Our families drove 5 hours one way and had to pay for a hotel and will drive 5 hours back and were told by Captain McNeil, "The warden told yall 2 days ago yall could not visit them, so the visit is denied." Our families never spoke with the warden. All of this because we will not go to general population. Now the food portions are getting smaller. They are trying to force us into an area we do NOT feel safe in. We are the victims in this attack.

We are in fear of our lives and have asked for protective custody until the attackers and any affiliates are charged and have no reach to us.

We cannot write grievances because this will make us an even bigger target for retaliation and further endanger our lives. The grievances are picked up by guards, officers and inmates or runners can have access to these. It is 100% a danger for us to report anything to anyone at this point. We were transferred from the facility this started at, but they have made it known and very clear they control things and nothing we say or do will change that. We can be treated any way they see fit and nothing will be done to them. Our families attempted to go through the appropriate chain of command, and it was handled the wrong way. That put us more in danger.

Plaintiff's hereby request the following relief:

a. Damages from the State of Alabama, Alabama Department of Corrections, Warden, Camelia Cargle
b. Medical Treatment for injuries including a specialist for Jason Campbell's eye and Kyle Horvat's head, and other stab wounds on both.
c. By awarding damages for the deliberate indifferent acts described above and bodily injuries and mental anguish for the continually acts also described in Count II, plus court costs and discovery costs.
d. By declaring that the acts and omissions, and practices of Defendants in this complaint above constitute a pattern or practice

  of conduct that deprives prisoners confined in Alabama's prisons for men of rights, privileges, or immunities secured or protected by the Constitution of the United States and that those acts, omissions, and practices violate the Eighth and Fourteenth Amendments to the Constitution of the United States.

e. Permanently enjoining Defendants, their officers, agents, employees, subordinates, successors in office, and all those acting in concert or participation with them from continuing the illegal acts, omissions, and practices set forth in this complaint.

f. Requiring Defendants, their officers, agents, employees, subordinates, successors in office, to take such actions as we will ensure constitutional conditions of confinement are afforded to prisoners in Alabama's prisons for men.

g. Any and all further equitable relief as it may deem just and proper.

## COUNT II – FRAUDULENT CONDUCT BY WARDEN CAMELIA CARGLE

We adopt all the facts previously stated in the complaint and further adds the following:

After the attack on May 30, 2022, Warden Camelia Cargle was upset because the violent attack on us was communicated to the DOJ. The Warden stated in no uncertain terms, "Yall want to call the big dogs, so I got something for yalls asses."

For further punishment, Camelia Cargle reported that the incident, the attack, was motivated by racial bias as found in the ADOC profile for Jason Campbell which prior to transfer had no known marks or tattoos, but the date of transfer Camelia Cargle had alleged that Jason Campbell has "Lucs confederate flag with swastika". (http://www.doc.state.al.us/InmateHistory)

As a result of this intentional representation, which was committed contumely with the intention on the part of Camelia Cargle we were both injured.

The following injuries were a proximate consequence of this intentional act: we were moved to a different facility and confined to a small area (6 x 8 cell). We are refusing to be placed into general population because we are in fear or our lives and asked to be transferred to a facility that has protective custody. Because we are refusing to go to general population, we are deprived of snack line, canteen, and quarterly packages. These acts are punishment for reporting the attack to the DOJ. We are told that it is our choice and not punishment but to feel safe we are doing what we feel is necessary, so we feel we do not have a choice. Further we are mentally fragile after the attack, causing insomnia, nightmares when we do fall asleep, no air or relief from the heat in a cell that has been tested by the guards and read 92 degrees at 8-9 PM.

Dated this the 2nd day of August 2022.

**JURY DEMAND REQUESTED**

Respectfully Submitted,

*Jason Lee Campbell*
JASON LEE CAMPBELL

*Kyle Evan Horvat*
KYLE EVAN HORVAT

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August 2022, an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of the same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm email to the following attorneys:

State of Alabama
Governor Kay Ivey
600 Dexter Avenue
Montgomery, Alabama 36130

Alabama Department of Corrections
301 Ripley Street
Montgomery, Alabama 36104

Staton Correctional Facility
Camila Cargle
2690 Marion Spillway
Elmore, Alabama 36590

                                                                                 Jason Lee Campbell
                                                                                 Kyle Evan Horvat



U.S. POSTAGE PAID
FCM LG ENV
BESSEMER, AL
35020
AUG 02, 22
AMOUNT
$1.68
R2304H107821-06

35203

1028

SECURITY
AUG 04 2022
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

United States District Court
Northern District/Southern Div.
1729 5th Avenue North
Birmingham, Alabama 35203